

The following constitutes the order of the Court.
Signed: May 28, 2020

*M. Elaine Hammond*
_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CLICKAWAY CORPORATION,<br><br><br><br>Debtor. | Case No. 18-51662 MEH<br><br>Chapter 11<br><br>Date: May 13, 2020<br>Time: 1:00 p.m.<br>Crtm: 11 |

## MEMORANDUM DECISION RE OBJECTION TO CLAIM #44-2

Clickaway Corporation ("Debtor") objects to the amended proof of claim ("Claim 44-2") filed by Cellco Partnership d/b/a Verizon Wireless ("Verizon"). Verizon replied and the matter came on for hearing on May 13, 2020. Following hearing, the matter was taken under submission.

Claim 44-2 includes three components, two of which are no longer in dispute:

- A claim for unpaid telecommunications service in the amount of $5,328.24. This portion of the claim amount is undisputed.
- A claim based on chargebacks for deactivations and other ordinary course deductions. At the hearing, the parties agreed that this component was resolved through the Order Granting Motion for Turnover of Unpaid Commissions, Doc # 336, and representations made on behalf of Debtor and Verizon at the hearing on this claim objection.

1

The remainder of the claim is for damages that Verizon asserts resulted from Debtor's breach of the contract underlying the parties' business relationship. Specifically, Verizon asserts breach of contract claims based upon Debtor's alleged: (1) deceptive sale of used devices as new, (2) sale of devices acquired from prohibited sources, (3) sale of Verizon installment contracts for ineligible devices, and (4) infringement of Verizon's trademark and breach of related license provisions. Debtor disputes each of Verizon's breach of contract claims.

This court has jurisdiction over this objection to claim pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

For the reasons stated herein, Debtor's objection to Claim 44-2 is sustained in part and denied in part. A further hearing will be set to determine the appropriate measure of damages and allowed claim amount in accordance with these findings.

Burden of Proof:

A properly filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 3001(f). If a claim is based on a writing, the writing must be provided with the proof of claim. FRBP 3001(c)(1). The Verizon Wireless Agent Agreement – ClickAway Corporation d/b/a EVO2 ("Agent Agreement") was filed with Claim 44-2, in addition to other supporting information. In order to defeat Verizon's claim, Debtor must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proof of the claims themselves." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). If Debtor does so, the burden reverts to Verizon to prove the validity of the claim by a preponderance of the evidence. *In re Consol. Pioneer Mortg.*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd sub nom. In re Consol. Pioneer Mortg. Entities*, 91 F.3d 151 (9th Cir. 1996). Here, Debtor's initial burden is met as both parties rely on the same evidence to support their positions – the terms of the Agent Agreement, related schedules, correspondence over the course of their business relationship, and a sale receipt. Thus, the burden reverts to Verizon to prove the validity of Claim 44-2 by a preponderance of the evidence.

The parties agreed on the record that resolution of the claims asserted for deceptive sales, sales of devices from prohibited sources, and installment contracts for ineligible devices are matters of contract interpretation and appropriate for resolution on the record before the court. The parties further agreed that additional evidence may be required for determination of the damages associated with any breach of contract claim established by Verizon.

Breach of Contract Claims:

1. Deceptive sale of used devices as new

The underlying facts are not in dispute. Debtor admits to selling used devices to customers. Debtor provided written notice to the customer that the device was used on the sale receipt. Debtor maintained a customer satisfaction program and received a small number of complaints on this basis.

The parties dispute whether Debtor's actions satisfied the obligations set forth in the Agent Agreement.[1]

The Agent Agreement is between designated Verizon Wireless Entities (referred to therein as "VZW") and Debtor as "Agent." The agreement is approximately 16 pages, plus at least eight exhibits relevant to the issues raised in Verizon's claim. It is very detailed and seeks to control or require approval of the majority of the Agent's business operations, but for the pricing of devices and whether Debtor is required to purchase any devices from Verizon.

Verizon asserts that Debtor's practices did not satisfy Section 3.1 of the Agent Agreement: "Agent shall conduct itself with the highest standards of honesty, integrity and fair dealing and shall comply with [supplemental provisions]." Sections 3.1(c) and 3.2.1 frame this broad language.

    a. Section 3.2.1 details the information to be included in the Agent's "written Equipment sales contract." Section 3.2.1 requires multiple disclosures, including that the contract is between Agent and the customer, a complete and accurate description of the Agent's Equipment return policy, early termination fees or other fees associated with a return,

---

[1] The Agent Agreement is the May 2014 form. Some Schedules to the Agent Agreement have different form dates. These dates are noted when relevant.

3

and that Equipment shall be returned to Agent, not to Verizon. It also requires disclosure to the customer in writing of the used, reconditioned or refurbished nature of the Equipment. The requirement requiring disclosure regarding used Equipment is set forth in the same paragraph that requires written disclosure of other material terms and conditions.

  b. <u>Section 3.1(c)</u> requires compliance with the "Compliance and Clear Disclosure Guidelines for VZW Agents" found at Attachment 1 to Exhibit C (the "Disclosure Guidelines"). The Disclosure Guidelines provide the disclosure requirements without the legalese. It appears that Verizon intended for this document to be shared by each Agent with their sales associates.

 The Disclosure Guidelines specify that disclosure of certain information is relevant and should be disclosed. The information that must be provided to the customer includes allowance minutes, minimum contract term, return policy, charges and fees associated with the service, early termination fees, charges associated with returns, and optional services with additional fees.

 The Disclosure Guidelines note that the amount and detail of information to be provided should be framed by what the typical consumer, acting reasonably, expects to receive. For example, "the typical consumer activating Verizon Wireless service for the first time in an agent's location will expect to receive all of the terms and conditions of the service, and to have the key terms specifically highlighted by the sales representative" and "it is *NEVER* appropriate to provide inaccurate information, . . . Verizon Wireless does not edit or withhold information from customers, we educate them and we expect our agents to do the same."

  c. <u>Analysis of the Sales Receipt</u>

 Verizon criticizes Debtor's disclosure of the used Equipment in the receipt. Section 3.2.1 sets forth information to be provided in the "written Equipment sales contract." In the normal course of purchasing goods from a store, the only writing between the seller and customer is a receipt. Black's Law Dictionary (11th ed. 2019) defines a receipt as a "written acknowledgment that something has been received; esp., a piece of paper or an electronic

4

notification that one has paid for something." Nothing in Sec. 3.2.1 or the Disclosure Guidelines indicate that the "written Equipment sales contract" must be anything other than a receipt. Verizon does not reference any alternate form of writing in Claim 44-2 or its briefing. So, despite Verizon's protests that Debtor used a receipt to convey the required information, Sec. 3.2.1 indicates that the receipt is the proper place for Debtor to provide the written disclosure.

Further, Sec. 3.2.1 sets forth the disclosure requirements required for every sale and the disclosure requirements regarding used Equipment. No language in the Agent Agreement indicates that disclosure of used Equipment requires a different or higher form of disclosure. In support of Claim 44-2, Verizon provided a sales receipt[2] issued by Debtor in connection with a sale of used Equipment (the "Receipt"). Verizon complains about the used Equipment disclosure on the Receipt. Yet, it makes no mention of the following required disclosures also provided on the Receipt, in the same font:

- disclosure of initiation fee,
- return policy, fees associated with return, and method of refund,
- method of processing returns,
- identification of Debtor as seller,
- minimum commitment period,
- early termination fees, and
- when a hardware collection fee will be assessed

d. Open Box disclosure

Verizon further argues that Debtor's use of the term "Open Box" to describe used, reconditioned or refurbished Equipment is deceptive.

Looking first to the language itself, Debtor's explanation of the term on the receipt states: "Open Box items may have been powered on, activated, or refurbished." The term "used" is not included. But Verizon chose to use the term "Certified Pre-Owned"[3] to identify

---

[2] Claim 44-2, Exhibit A-7.
[3] Smith Decl., Exhibit I (Doc # 475-9).

5

its used Equipment, so the term "used" is not essential.  No evidence was presented that Debtor "reconditioned" devices.  The failure to disclose something they were not doing is not deceptive.  Finally, the term "refurbished" is found in Sec. 3.2.1 and the receipt, and, therefore, is adequate.

Whether Debtor's disclosure was deceptive should not be determined solely on the language applied.  It should also be considered in the context of the sale transaction.  On the Receipt, all the disclosures regarding used Equipment are highlighted and starred.  This indicates that this information was verbally brought to the customer's attention at the time of sale.  The term "Open Box*" is underlined.  The first disclosure provided is underlined and starred, and again notes the device is Open Box.  The information that "Open Box items may have been powered on, activated, or refurbished" is subsequently underlined and starred.  No information was provided as to who underlined and starred the receipt.  However, these acts are consistent with the disclosure procedures placed on sales associates in the "Disclosure Guidelines."  It is also consistent with the practices described in the Sutherland declaration: "In addition, our associates are instructed to provide clear verbal disclosure of the device condition."[4]  Thus, I find it is reasonable to assume the notations were made at the time of sale.

      e. Pricing for used devices

In its response to Debtor's objection, Verizon argues that Debtor's charging the same price for a used device as a new device failed to satisfy Debtor's obligation "to conduct itself with the highest standards of honesty, integrity and fair dealing."  This cannot form the basis for a breach of contract claim as the Agent Agreement provides at Sec. 4.5:  "AGENT SHALL UNILATERALLY ESTABLISH ITS RETAIL SALES PRICES, ADVERTISED PRICES OR OTHER FEES FOR EQUIPMENT IN ITS SOLE DISCRETION, AND VZW SHALL HAVE NO CONTROL OVER SUCH PRICES, CHARGES OR FEES." (emphasis in original)

---

[4] Declaration of Richard Sutherland, Exhibit F, 18-5031, Doc # 53-15.  As referenced in Claim 44-2, Exhibit A-6.

#### f. Findings as to sales of used devices

Verizon required multiple disclosures to be made to the customer by Debtor at the time of sale. These disclosures were provided in the receipt. Verizon challenges Debtor's enhanced disclosure regarding used Equipment but raises no concerns about the remaining disclosures – disclosures of the type frequently found on a sales receipt. Use of the term and definition for "Open Box" is not inconsistent with Verizon's use of "Certified Pre-Owned" to indicate used Equipment. Verizon's express authorization that Agent may establish pricing at its sole discretion prohibits price from factoring into this analysis.

As such, I find that Debtor's disclosure of used Equipment on the Receipt is consistent with Sec. 3.1(c) and 3.2.1 of the Agent Agreement; that use of the term "Open Box" and its definition does not clearly violate the Agent Agreement; and Verizon's remaining argument contradicts Sec. 4.5 of the Agent Agreement. In sum, Verizon has not met its burden to establish that Debtor engaged in the deceptive sale of used devices as new by a preponderance of the evidence.

### 2. Sales from prohibited sources

Verizon next asserts that Debtor breached Sec. 4.2 of the Agent Agreement by "selling used phone devices to consumers which were not acquired by the Debtor from manufacturers, Verizon, or distributors authorized by Verizon." Debtor responds that the Agent Agreement only restricts the entities that Debtor may *purchase* equipment from, and it does not prohibit the sale of phones that were previously activated on Verizon's network and acquired as trade-ins.

Again, we return to the terms of the Agent Agreement to resolve this question of contract interpretation. Article 4 of the Agent Agreement is titled "Equipment Requirements, Procurement, Warranty, Retail Sales Prices." At the hearing, Verizon's counsel argued that Article 4 restricts the sale of devices. It does not. Article 4 addresses the issues provided in its title and specifically provides in all caps that Agent unilaterally establishes its prices, charges or fees. Sec. 4.5.

Section 4.2 provides: "Agent shall purchase Equipment *only and directly* from (i) manufacturers, (ii) distributors authorized by VZW, or (iii) VZW." (emphasis added) In order to interpret this provision, reference to the Glossary provided in the Agent Agreement is required:

- **Equipment** means mobile or portable telephones and data communications devices, **including, but not limited to,** wireless modems/PC cards and PIBs, used in conjunction with or in order to utilize Service, but excluding any Accessories.
- **PAD or Previously Activated Device** means a unit of VZW Equipment that has been active on the VZW Facilities at any time and for any amount of time.
- **PAD-Like New** means any PAD that was new when Agent performed an Activation or Upgrade and was subsequently returned using the Returns Process Control functionality.
- **VZW Equipment** means Equipment used in conjunction with or in order to utilize VZW Service that complies with all applicable laws and regulations is approved for use with VZW Service, and otherwise complies with the requirements set forth in Exhibit D to the Agreement.

By definition, a PAD is a unit of Equipment. The issue then is whether a return or trade-in is a *purchase* of Equipment. Although not defined in the Agent Agreement, return is used consistently throughout to refer to a customer's return of a device pursuant to the Agent's return policy, which must satisfy Verizon's minimum standards. Therefore, a return is not a purchase.

The term "trade-in" is also not defined. However, Exhibit L, paragraph 6, addresses a trade-in made pursuant to an Installment Contract. It requires Agent to disclose "Trade-In Criteria and the requirement that a Subscriber return the unit of VZW equipment directly to VZW when participating in the Trade-In Program." Further, while paragraph 12 prohibits Agent from accepting VZW Equipment under Installment Contract, it does not prohibit Agent from accepting trade-in devices on other types of sale. As such, a trade-in is not a purchase.

Accordingly, Verizon has not satisfied its burden to establish that the Agent Agreement was breached by the sale of devices obtained through return or trade-in.

3. <u>Sale of Installment Contracts on ineligible devices</u>

Verizon next asserts that Debtor breached the Agent Agreement by assigning to Verizon Installment Contracts for ineligible devices, namely used phones. Debtor asserts that the Installment Contract program was expanded over time and authorized inclusion of additional devices, including PAD-Like New.[5] The Agent Agreement and its attachments, as well as memorandum and correspondence related to the Program's modification during the parties' contractual relationship were submitted into evidence for interpretation of this asserted contractual breach.

Debtor and Verizon entered into the Agent Agreement in February 2015. Installment Sales of VZW Equipment are authorized pursuant to Sec. 4.9 of the Agent Agreement, subject to the terms and conditions set forth in Exhibit L, which provides the terms as of February 11, 2014. It states in Sec. 5:

> VZW shall unilaterally decide which makes and models of VZW Equipment are eligible for the Program . . . Agent shall not offer the Program to a Subscriber or potential Subscriber with a unit of VZW Equipment that is not eligible for the Program . . . Agent shall only offer the Program in connection with VZW Equipment that is New Equipment.

Through its communications to Debtor, Verizon subsequently modified the last sentence of Exhibit L, Sec. 5.

Attached as Exhibit A-8 to Claim 44-2 is a form letter from Verizon on Installment Contracts. It expands the Program to include PAD-Like New, in addition to the previously allowed New Equipment. As before, Verizon maintains control over which makes and models of Equipment are authorized. Further, this memo notes that updates will be provided if there are future changes to the program. The memo is not dated.

---

[5] Installment Contracts are also referred to as the Program in the Agent Agreement. "Program means the VZW installment sales program for certain VZW Equipment . . ."

9

Through email, Debtor sought clarification from Verizon on how to identify authorized PADs for the Installment Contracts. This correspondence ran from October 12 through November 10, 2015. The email string begins with a request from Thomas Vu, an employee of Debtor responding to an email with a memo as the same title as the form document. Vu requests clarification on how to identify a device that is PAD-Like New. The initial response from the Verizon representative is that he is not clear and will find someone else to answer the question. A week later Vu follows-up, and when no response is received ten days after that, he reaches out to another contact. On November 2, 2015, Vu finally receives a response from Zoraida Finlez. She informs him that PAD-Like New is any new device that has been sold, then returned via RPC within the first 30 days of the original sale. She also directs Vu to a tool with pop ups that indicate whether a device is eligible, adding, "however, final determination of commission eligibility is determined by commissions and compliance tables."

Vu then requests information on how to ensure Debtor will be eligible for full commissions at the time of sale. Finlez directs him to a tool in OMNI called commissions eligibility at point of sale and recommends ensuring that returns are being processed correctly through RPC and devices are being purchased through approved vendors. She again reminds Vu that Verizon has final say and refers him to the contract for a more thorough review.

Vu's last question is whether compensation is reduced or the entire transaction is not commisionable if a device is subsequently determined to not be PAD-Like New. Finlez responds, "As far as payments goes, this is covered in your exhibit b (please see attached)." Unfortunately, the information provided by Finlez is incorrect. First, neither the Agent Agreement, Exhibit L, nor any other document submitted as evidence requires a device to be returned within 30 days of the original sale in order to qualify as PAD-Like New. Thus, Debtor was provided incorrect information on what qualifies as PAD-Like New.

Second, the contract Vu is referred to had not been updated to reflect the commission changes with the increase in devices eligible for the Program. Therefore, the instruction to review the contract and that the Agent Agreement controls does not help. The parties did not

10

address the lack of updates to the contract in their briefing. My findings on this point are based on the following. Exhibit B to the Agent Agreement addresses compensation. The form's effective date is July 13, 2014. When drafted, Installment Contracts were limited to New Equipment. In addition, Vu subsequently forwarded the email string with Verizon's representatives to Sutherland and Rowen. Having reviewed the Exhibit B referenced by Finlez he determines, "We are not in contract violation just are in a reduced commission if the devices we activate are determined to be a PAD not new (PAD other)." Vu had reviewed and applied "Chart 7 PAD – Other Activation and Upgrade Commissions with 2-year CA" which does not appear to apply to the Installment Contract commission. But Chart 6 is also not directly on point because it does not address the addition of PAD to Installment Contracts but it is the only schedule Debtor has.

Overall, these email communications can be viewed as benefiting each party's position. For Verizon, Debtor was directed to use the Returns Processing Control, work with approved vendors, and reminded that the Agent Agreement controls. For Debtor, despite seeking additional information, Verizon was unable to provide a clear answer, information provided by Verizon was not correct, and based on the lack of clarity regarding the program, Debtor may have been unable to avoid problems with the Installment Contract program in 2015.

No further guidance on the Program was submitted into evidence for the next two years.

Finally, in the summer of 2017 Verizon provided more detailed information in the form of two memos:[6]

    June 30, 2017 Memo: CPO VZW iPhone on Device Payment Program: New trial of Certified Pre-owned Inventory on Installment contract provided the following information:
- "The objective of this trial is to evaluate if lower priced VZW Equipment is an attractive alternative to Subscribers and potential Subscribers."

---

[6] Smith Declaration, Exhibit I (Doc # 475-9).

11

- o "VZW is making some CPO/Used Equipment* available to you that have been refurbished in accordance with VZW standards and that are classified as "Certified Pre-Owned" ("CPO Inventory")."
- o "Eligible CPO Inventory will be made available to you for purchase in Dymax. Notwithstanding Section 5 of Exhibit N[7] of your Agent Agreement addressing the Program, CPO Inventory will be eligible for the program during trial and will be eligible for Compensation as a 'VZW iPhone' in accordance with Chart 5 to Exhibit B to your Agent Agreement. Only CPO Inventory made available for this trial, and no other units of Used Equipment, is eligible for the Program."
- o "*Used Equipment means any unit of Equipment that has been active on the VZW Facilities (or the Facilities of any Carrier) at any time and for any amount of time.*" (italics in original)

August 28, 2017 Memo: Used Equipment and Installment Contracts:

- o VZW "will make for Sale a limited quantity of Used Equipment identified in the Chart below ("CPO Inventory") that will be eligible in the System for Activations/Upgrades on Postpay Service on Installment Contracts. The CPO Inventory will be available starting August 31, 2017."
- o "CPO Inventory will be made available to you for purchase in Dymax. Notwithstanding Section 5 of Exhibit N[8] (the Program), this CPO Inventory will be eligible for the Service Commission as "Smartphones" in accordance with Chart 5 to Exhibit B to your Agreement."

These memos are the earliest, clear disclosure of the Program requirements and limitations on Used Equipment. After June 30, 2017, Debtor was on notice that Used Equipment (a new term that includes PADs) available for an Installment Contract was limited to the CPO Inventory obtained through Dymax. Prior to this date, the information provided

---

[7] This appears to be a reference error. There is no Exhibit N to the Agent Agreement. Exhibit L, Sec. 5 limits the Program to New Equipment.

[8] Same issue as above.

12

by Verizon to Debtor is unclear and at times contradicts the terms of the Agent Agreement. As such, Verizon has not met its burden to establish a breach of contract related to ineligible devices placed on Installment Contracts prior to June 30, 2017.

Additional evidence may be provided regarding calculation of damages for ineligible devices placed on Installment Contracts after June 30, 2017, as contemplated at the hearing.

<u>Breach of Trademark License</u>:

In Claim 44-2, Verizon asserts a new claim for breach of trademark license. The basis of this claim is that Debtor violated the Agent Agreement, Exhibit I, Sec. 5.5 that states:

> Agent shall not use the VZW Licensed Marks in connection with . . . the sale or lease of any unauthorized Equipment, or in any other manner not expressly authorized by this Agreement or separately in writing by VZW, or in any manner that is likely to confuse or mislead.

Verizon argues that Debtor used Verizon's trademarks when their actions were not in compliance with the Agent Agreement, thereby violating the license. Debtor objects that basis for relief claim was late-filed as it was not included in the original proof of claim.

FRBP 7015, incorporating Federal Rule of Civil Procedure 15(c), applies. "A new claim must be based upon a common core of operative facts. It is the operative facts that control the question of relation back, not the theory of liability applied to those facts." *In re PG&E Co*., 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004). Under well-settled principles "there must be facts alleged in the Original Claims that would reasonably alert Debtor to the possibility of assertion of new theories based upon those facts to support the Amended Claims, whether or not those facts or events were foreseeable." *Id*. at 88.

Claim 44-1, the original proof of claim, was filed November 19, 2018. Claim 44-1 states the basis of the claim is "Chargebacks pursuant to contract; unpaid service charges." The trademark claim does not relate to chargebacks or unpaid service charges. Exhibit A asserts there are three components to Claim 44-1: (1) Contract claims which have been liquidated to date, (2) Contract claims which remain contingent, but will be liquidated, (3) Unpaid claims for telecommunications service. Of these, the first category does not apply and

13

the third category does not relate to a breach of contract claim. The second category also does not apply because the trademark-based claim was not contingent when Claim 44-1 was filed. The question of whether a claim is contingent often arises in bankruptcy, primarily in determining whether a debtor's debts exceed the debt limits for Chapter 13. A claim is non-contingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition. *In re Nicholes*, 184 B.R. 82, 88 (9th Cir. B.A.P. 1995). Debtor ended operations as an authorized retailer of Verizon at the end of June 2018. Prior to the filing of Debtor's case, the sale of its stores to Victra closed. As such, when the proof of claim was filed, all events giving rise to liability for a breach of trademark license had occurred, thus, the contract claim did not remain contingent.

The only factual basis asserted in Claim 44-1 that might be able to support the newly asserted trademark claim is "commission damages from debtor sale of used devices as 'new.'" As explained above, Verizon did not establish a contractual breach on these facts. It follows that if there was no contractual breach then a claim for misuse of the Verizon trademark through the breach would also fail.

The critical inquiry is whether Debtor would be unduly prejudiced by the amendment. *See In re Robert Farms, Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992). In *Robert Farms*, the Ninth Circuit cited with approval the test set forth by the B.A.P. in *In re Wilson*, 96 B.R. 257, 262 (9th Cir. B.A.P. 1988): (1) bad faith or unreasonable delay in filing the amendment, (2) impact on other claimants, (3) reliance by the debtor or other creditors, and (4) change of the debtor's position.

I find that two factors weigh against amendment. First, Claim 44-2 was not filed until 15 months after Claim 44-1. This is over a year after the estimated time for amending the claim based on the Termination Agreement. Thus, an unreasonable delay occurred. Second, Claim 44-2 will have a significant impact on other claimants. It is one of the largest claims in the case. Continued litigation over a claim premised on a factual basis already determined to be meritless is a waste of resources. More importantly, due to Verizon's assertion of setoff rights, the funds to pay this claim are being held by Verizon. If the claim is reduced or

14

UNITED STATES BANKRUPTCY COURT<br>for the Northern District of California

1 disallowed, the difference between the held funds and the allowed claim amount will be paid 2 to the estate and distributed to creditors pursuant to the confirmed plan. The remaining two 3 factors are not applicable and do not weigh in favor of amendment.

4 Thus, leave to amend is denied as to Verizon's claim for breach of trademark license. 5 Amendment of the claim will prejudice debtor and the estate. The underlying contractual 6 basis has been determined as without merit and no equities weigh in favor of authorizing the 7 amendment.

8 <u>Determination of Allowed Claim Amount</u>:

9 A status conference is set for June 18, 2020, at 11:00 a.m., by Zoom to determine a 10 date for hearing on presentation of any additional evidence regarding calculation of damages 11 in accordance with the findings provided herein. The parties shall meet and confer regarding 12 the additional evidence to be provided and file a joint proposal for resolution of these issues 13 no later than June 11, 2020.

14 **END OF MEMORANDUM DECISION**

**COURT SERVICE LIST**

All ECF Recipients